188 So. 137

**WALTER et al. v. CAFFALL et al.**
No. 35204.
April 3, 1939.

Modisette & Adams, of Jennings, for appellants.

Heinen & Lestage, of Jennings, and S. W. Plauche and Cline, Thompson, Lawes & Cavanaugh, all of Lake Charles, for appellees.

LAND, Justice.

An examination of the law and facts of this case convinces the court that the judgment appealed from is correct. As both the law and facts are ably discussed and fully reviewed by the trial judge, we have adopted, as our own, his opinion in the case, which is as follows:

"This is a suit by the surviving spouse and heirs of Henry E. Walter, deceased,

against Frank B. Caffall, the Caffall Implement Company, Inc., and the Caffall Oil Corporation, to recover the Principal sum of $8,841.67 with interest and attorney's fees, alleged to be due on the purchase price of a tract of land purchased by Frank B. Caffall from Henry E. Walter by deed dated February 3, 1920. The Caffall Implement Company, Inc., and the Caffall Oil Corporation are made co-defendants as assumers of the said indebtedness both by law and by conventional agreements.

"The petition for cause of action alleges that Henry E. Walter under date of February 3, 1920 executed an act of sale in favor of Frank B. Caffall conveying to him 360 acres of land in Jefferson Davis Parish for a consideration of $23,400, and as a part of the consideration the said Frank B. Caffall executed two promissory notes:

"(a) One note for $5,734.20 dated August 6, 1920, maturing December 1, 1920, and stipulating 8% interest and 10% attorney's fees.

"(b) One note for $3,107.47 dated on or about February 3, 1920, the date of maturity of which and the whereabouts of the said note being unknown to petitioners.

"The petition alleges that in the year 1923 after the death of Henry E. Walter and prior to the closing of his succession, Frank B. Caffall, together with the Caffall Implement Company, Inc., made a voluntary surrender of their property for the benefit of their common creditors, the title to the entire property being placed in the

name of the Caffall Implement Company, and to be thus administered by trustees; that in the act of transfer or assignment by Frank B. Caffall to the Caffall Implement Company, Inc., of all his property, the Caffall Implement Company expressly assumed all of the personal obligations of Frank B. Caffall, including the obligation due the petitioners; that the affairs then of the Caffall Implement Company were administered by trustees for approximately eighteen months when it was terminated by a receivership.

"That in the year 1935 the receivership of the Caffall Implement Company was terminated and its assets returned to that corporation; that the Caffall Oil Corporation was then organized and all the assets of the Caffall Implement Company were transferred to the Caffall Oil Corporation; that in the act of incorporation the Caffall Oil Corporation assumed the obligations of the Caffall Implement Company, including the obligation due the petitioners, and thus became an assumer of this obligation not only by law but also by express conventional agreement.

"The plaintiffs allege that they were not parties to any voluntary surrender by Frank B. Caffall and the Caffall Implement Company of their assets for the benefit of their common creditors, and had no knowledge or information of the same and received no notice as creditors of either Frank B. Caffall or the Caffall Implement Company.

"The petition further alleges that the first note above mentioned for $5,734.20 was delivered to Henry E. Walter and was

later pledged by him to the Calcasieu National Bank as collateral security for a certain indebtedness due by Walter to the Bank; that the said note was duly inventoried after the death of Walter as a part of the assets belonging to his succession, and is still owned by petitioners; that this note, however, was included in the list of liabilities due the Calcasieu National Bank by the Caffall Implement Company, and credited tó the said Bank or one of its affiliates on the receiver's accounts.

"That the smaller note for $3,107.47 was either retained by Frank B. Caffall and never delivered, or if delivered, was returned to Caffall for safekeeping or was lost or misplaced by Walter, and that petitioners have never seen this note or had it in their possession; that the said item appeared in the personal books of Frank B. Caffall as a bill payable in favor of the H. E. Walter Estate at the time of the assignment of his property to the Caffall Implement Company, and that the Receiver of the Caffall Implement Company carried this item on his provisional and final accounts and as an outstanding indebtedness against the receivership; that they have recently been informed that the Caffall Oil Corporation has recognized Frank B. Caffall upon a purported assignment of the said item as the rightful owner of the said indebtedness and has paid him in stock or bonds or both to the amount of this indebtedness; that any such purported assignment is false and entirely unauthorized, and that none of the petitioners have ever made any assignment or attempted to make any assignment of this indebtedness.

"The petition further alleges that the purpose of the surrender by Frank B. Caffall and the Caffall Implement Company of their assets for the benefit of their common creditors, and the placing of the same in the hands of trustees was to hold at bay all non-assenting creditors and to prevent them from proceeding against them to enforce the payment of their debts; and that the Caffall Oil Corporation is a mere continuation of the Caffall Implement Company, having identically the same stock holders and identically the same assets, and that the plan which resulted in the termination of the receivership of the Caffall Implement Company in the year 1935 and the organization of the Caffall Oil Corporation, and the subsequent transfer of its assets to the Caffall Oil Corporation was for the purpose of holding at bay the non-assenting creditors and to prevent the non-assenting creditors from proceeding to enforce the payment of their debts due by the Caffall Implement Company, and that all such arrangements constituted a legal fraud upon non-assenting creditors.

"That the purported recognition of the note for $5,734.20 by the Caffall Implement Company as a liability in favor of the Calcasieu National Bank or one of its affiliates and the purported assignment of the item of $3,107.47 to Frank B. Caffall and the purported payment of such item to Frank B. Caffall by the Caffall Oil Corporation as the recognized rightful owner of the same have all been without the knowledge, acquiescence or consent of the petitioners; and that all the facts as here-

in alleged have just been learned by petitioners since March 9, 1935.

"The petition then closes with the prayer:

"First, that the pretended assignment to Frank B. Caffall of the item of $3,107.-47 be decreed null and void.

"Second, that Frank B. Caffall, individually, and the Caffall Implement Company, Inc., and the Caffall Oil Corporation, be condemned, in solido, to pay to the petitioners the sum of $8,841.67 with 8% interest as to the item of $3,107.47 from February 3, 1920, and as to the item of $5,-734.20 from August 6, 1920, and 10% additional on the aggregate as attorneys' fees.

"Third, that all the property conveyed by Frank B. Caffall to the Caffall Implement Company and all that conveyed by the Caffall Implement Company to the Caffall Oil Corporation be decreed burdened with a vendor's lien and privilege in favor of the petitioners to satisfy the said judgment; and in the alternative, if the Court should hold that the Caffall Oil Corporation is not individually and personally liable for the amounts, then in that event the transfer and sale of the property to the said corporation be dissolved and the said property be subjected to the payment of petitioners' judgment in default of payment thereof by the Caffall Oil Corporation.

"The defendants answer this suit with a general denial on its merits but file at the same time a special plea of prescription of one, three, five and ten years.

"The Court at the outset acknowledges its indebtedness to both counsel for the plaintiffs and counsel for defendants for the very able and exhaustive briefs on this rather voluminous record.

"This Court finds no difficulty in finding that Frank B. Caffall did purchase from Henry E. Walter by deed dated February 3, 1920, a tract of land containing 360 acres for a consideration of $23,400. The original act of sale appears in the record as Exhibit P-7. The fact of the sale is also supported by the testimony of Frank B. Caffall, himself.

"The Court is further convinced that the consideration as expressed in the act of sale was not all paid in cash, and that the note for $5,734.20 executed by Frank B. Caffall in favor of Henry E. Walter under date of August 6, 1920 represented a portion of the purchase price of this tract of land. This conclusion is based on the testimony of Frank B. Caffall, himself (page 7 and 8, Tr. Evidence of Frank B. Caffall), and is strongly corroborated by the original note itself filed in the record as Exhibit P-2.

"The Court is further convinced that this note for $5,734.20 has never been paid. This conclusion is based on the testimony of Frank B. Caffall, himself (page 24, Tr. Evidence of Frank B. Caffall). This conclusion is also supported by the testimony of Maj. S. A. Knapp (pages 2-8, Tr. Evidence of S. A. Knapp).

"As to the alleged note for $3,-107.47, this Court is of the opinion that the evidence fails to show with any de-

gree of legal certainty that any such note was ever executed by Frank B. Caffall, or that any such note ever existed; it was never seen by any of the petitioners and was never in their possession. The Court is, however, satisfied that this was an item appearing on the personal books of Frank B. Caffall as a Bill Payable in favor of the H. E. Walter Estate at the time he made a transfer of his property to the Caffall Implement Company; the Court is further of the opinion that this item was carried through the receivership proceedings of the Caffall Implement Company as a liability of the Company and that by virtue of a purported assignment of this item in favor of Frank B. Caffall in 1934 the Caffall Oil Corporation paid the said Frank B. Caffall the amount of this item in stocks or bonds or both of this Corporation. On the other hand, the testimony of Frank B. Caffall as to this item is to the effect that this item should never have appeared in the receivership records; that the item grew originally out of certain farming operations several years prior to 1920 in which H. E. Walter and Peter Walter were farming in partnership on his lands, and should have been taken off his books when he made an assignment of his property and turned his personal books over to the Caffall Implement Company. In view of the uncertainty of this item and the conflicting testimony, this Court has not been convinced to that degree of legal certainty required by law to hold that this particular item ever existed in the form of a note or that it represented specifically as such a portion of the purchase price of the said tract

of land, or any other indebtedness due H. E. Walter by Frank B. Caffall, and the plaintiffs' claims as to this particular item must be rejected; but in dismissing the plaintiffs' claim as to this item the Court does not intend to hold that the purported assignment of this item in 1934 to Frank B. Caffall was a valid assignment.

"There appears in the pleadings and in the testimony some suggestions that after the death of Walter and prior to the closing of his succession the Calcasieu National Bank as pledgee of the note for $5,734.20 became vested with title ownership, and that the note was carried on the books of the Receiver of the Caffall Implement Company as a liability of that Company in favor of the Calcasieu National Bank and that the Caffall Oil Corporation later paid the Calcasieu National Bank or one of its affiliates the amount of this indebtedness in its stock or bonds or both. The Calcasieu National Bank, however, is not a party to this suit; and as the claims of the Calcasieu National Bank as to the ownership of this note appears to have been adjudicated in this Court in Suit No. 18,573 sitting in and for Calcasieu Parish, this Court will not at this time raise this issue.

"There remains, therefore, only the disposition of the item of $5,734.20, and the liability of the Caffall Implement Company and the Caffall Oil Corporation as co-obligors, and also as to the plea of prescription.

"The proposal of Frank B. Caffall to transfer all his personal property to the Caffall Implement Company to be admin-

istered jointly with the assets of the Caffall Implement Company for the benefit of their common creditors, dated April 4, 1923 and shown as Exhibit P-1 and at item 26 thereof, contains the following stipulation:

" 'The consideration for this conveyance and also for any real estate to be conveyed under stipulations in item 25 above mentioned, to be the assumption by the Caffall Implement Company, Inc. of the payment and discharge of all my liabilities in accordance with a certain agreement of March 3rd, 1923, made between myself and the Committee representing all my creditors and the creditors of the Caffall Implement Company, Inc.'

"This proposal appears to have been accepted and to have become binding on the Caffall Implement Company by resolution of the Board of Directors dated April 4, 1923.

"There appears, therefore, no doubt, in the mind of this Court, from the plain stipulations of this agreement that the Caffall Implement Company thus became a conventional obligor for the debts of Frank B. Caffall, including the debt represented by the note for $5,734.20 in favor of Henry E. Walter.

"The record further shows that at the termination of the receivership of the Caffall Implement Company and the subsequent transfer of all its assets to the Caffall Oil Corporation in 1935, the Charter of the said Caffall Oil Corporation contains the following provision:

" '(c) To assume and obligate itself to pay any and all lawful claims and indebtedness due and/or to become due and owing by said Caffall Implement Company, Inc. up to the date hereof, including the obligations of this corporation, and to issue and deliver stock, bonds, promissory notes and/or other evidence of indebtedness therefor, and to secure the payment of any and/or all of such claims and indebtedness bonds and notes by mortgage, pledge or other form of security.'

"There is here at least a conventional obligation to assume and pay the debts of the Caffall Implement Company by issuing to its creditors stock, bonds, promissory notes and/or other evidence of indebtedness and to secure the payment by mortgage, pledge or other form of security.

"But aside from such conventional obligations to pay the debts of Frank B. Caffall by the Caffall Implement Company, including the note for $5,734.20 in favor of Henry E. Walter, and the subsequent conventional obligation of the Caffall Oil Corporation to pay the debts of the Caffall Implement Company, including the debt evidenced by the note for $5,734.20, there is the question as to whether or not the Corporations are assumers in law of the said debt of Frank B. Caffall.

"The evidence in this case very clearly indicates that in 1923 at the time Frank B. Caffall assigned and transferred his property to the Caffall Implement Company to be administered by trustees for the benefit of their common creditors, their interests were greatly intermingled

and interlocked. Quoting from a letter from the Creditors' Committee dated March 3, 1923 and shown as Exhibit P-8 we take the following:

" 'The creation of such a holding company, in the opinion of those present, is absolutely imperative by reason of the fact that Mr. Caffall is endorser on practically all of the indebtedness of the Caffall Implement Company, Inc., and a considerable amount of his personal bills receivable and real estate have been pledged and mortgaged to secure creditors of the Caffall Implement Company, Inc. and by the further fact that some indebtedness of Mr. Caffall has been endorsed by the Caffall Implement Company, Inc. and some of its Bills Receivable have been pledged as security to Mr. Caffall's indebtedness, thereby creating interlocking liabilities which will make it almost, if not entirely impossible to administer and liquidate the assets of the two debtors separately.'

"The record further clearly shows that in the organization of the Caffall Oil Corporation and the subsequent transfer of the assets of the Caffall Implement Company to the Caffall Oil Corporation consisted solely of the assets of the Caffall Implement Company as transferred to the Caffall Oil Corporation; that there was not a single dollar of new capital; and that the Caffall Oil Corporation was in fact simply a reincarnation of the old Caffall Implement Company, and that the only consideration received by the stock holders of the Caffall Implement Company for the transfer of its assets to the Caffall Oil Corporation was stock in the new corporation.

"The evidence further clearly establishes the fact that the plaintiffs in this suit never participated in any of these proceedings or transfers; that they had no knowledge or information in connection with the assignment by Frank B. Caffall of his property to the Caffall Implement Company to be administered for the benefit of their common creditors, nor of the transfer of the assets of the Caffall Implement Company to the Caffall Oil Corporation; that none of them have ever received any notice of such assignment as creditors either of Frank B. Caffall or the Caffall Implement; nor have they ever approved, acquiesced or consented to any such arrangements.

"The testimony further clearly indicates that the purported assignment of the item of $3,107.47 to Frank B. Caffall was wholly unauthorized; and that on this unauthorized assignment the said Frank B. Caffall has been paid this amount by the Caffall Oil Corporation in its stock or bonds or both.

"The record in this case further convinces this Court that the note for $5,-734.20 held by the Calcasieu National Bank or one of its affiliates as pledgee was included in the list of liabilities due the Calcasieu National Bank by the Caffall Implement Company, and that the said Bank has been credited with this amount on the receiver's accounts.

"This Court is now of the opinion that the facts as disclosed in this record jus-

tify the allegation that these transfers, assignments and arrangements extending over a period of approximately twelve years were had and done to harrass and hold at bay non-assenting creditors and to prevent non-assenting creditors from proceeding against them to enforce the payment of their debts, and that such acts are fraudulent in law as against these non-assenting creditors.

"Our Civil Code (Article 3183) provides that the property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed ratably among them, unless there exist among the creditors some lawful cause of preference; and Article 1969 of the Code provides that every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor is illegal, and ought, as respects such creditor, to be avoided.

"But it is contended with some degree of force that there is nothing in the conduct of the Caffall Oil Corporation, especially, that would warrant a judgment holding that corporation personally liable for this indebtedness.

"This Court, as to this contention, is satisfied that the Caffall Oil Corporation is merely a continuation or a reincarnation of the Caffall Implement Company. The record shows that after all, the new corporation is no more than the old Caffall Implement Company in a new guise or new dress, and in the opinion of this Court it makes no difference that the Charter of the new corporation contains a proviso that the payment of the debts of

the old Caffall Implement Company shall be made in a particular manner.

"Under these conditions this Court is of the opinion that the organization of the Caffall Oil Corporation and the purported transfer of all the assets of the Caffall Implement Company to that Corporation for the consideration and in the manner disclosed in the record is a mere simulation and should be treated as such, and such transfer dissolved and set aside as no transfer had been made.

"This Court, therefore, after a careful study and analysis of this record and the jurisprudence of this State on the issues presented, must hold:

"1. That Frank B. Caffall and the Caffall Implement Company, Inc., are each, in solido, liable for the said indebtedness due petitioners represented by the note for $5,734.20, with interest at 8% from August 3, 1920, and 10% additional upon the whole as attorneys' fees, and that such judgment be enforceable in accordance with law.

"2. That the purported transfer and assignment from the Caffall Implement Company to the Caffall Oil Corporation be ordered dissolved, set aside and annulled as a simulation, and that any property in the hands of the Corporation may be seized and sold in accordance with law to satisfy this indebtedness in the same manner as though no transfer had been made from the Caffall Implement Company to the Caffall Oil Corporation.

"In the opinion of this Court the facts as disclosed in this record clearly

bring this case within the line of jurisprudence established by the Supreme Court of this State in the case of Alliance Trust Company v. Streater, 182 La. 102, 161 So. 168, 172, and the cases therein cited.

"As stated in the Streater case:

" 'A creditor's remedy in cases like this is either to have the transfer of the debtor's property to the corporation set aside as a fraudulent conveyance or to obtain an order for the seizure of the property in the hands of the corporation as though no transfer had been made, and this upon the ground that the corporation, the new entity, is the same as the old and by taking the title to the property under such circumstances is the assumer in law of the debts of the one making the transfer.'

"There remains to be considered the plea of prescription.

"The record clearly shows that this item of indebtedness was recognized as a personal liability by Frank B. Caffall at the time he transferred his property to the Caffall Implement Company, and that the item was carried throughout the receivership of the Caffall Implement Company on its books and accounts as a continuing liability of the Company, and that likewise the Caffall Oil Corporation recognized the indebtedness.

"But aside from these conventional acknowledgments of the indebtedness the record shows that this note passed out of the possession of Walter before his death and was held by the Calcasieu National Bank as collateral security to a certain indebtedness at that time due by Walter to the Bank; that soon thereafter Walter died, and that these plaintiffs had no knowledge of the existence of this fact and the other facts upon which this suit is brought until after March 9, 1935. Counsel for defendants contends that the plaintiffs might have at any time obtained the information which they contend was obtained only after March 9, 1935; that they were not deterred in finding the same; that none of the records containing the facts upon which this action is based were ever concealed, and that in order for one to avail himself of the defense of ignorance he must show that his ignorance was not wilful nor the result of negligence, and was not brought about by his own action or inaction in the premises.

"The record shows however that the facts upon which this action is based are disclosed in several rather voluminous records in litigated suits on the Court Dockets of Calcasieu and Jefferson Davis Parishes to which suits none of the plaintiffs in this suit were ever made parties. The record in this suit shows that the plaintiffs had never been put on notice of any of these facts and had apparently no reason to make any special search of the records; that they had no knowledge or information as to the facts; that none of the defendants ever disclosed any of these facts to them, nor had any one else ever called their attention to these facts. This Court is of the opinion that the plaintiffs under the circumstances disclosed in this record come within the rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring a suit, when such ignorance is not

wilful and does not result from negligence. Simply because these facts may have been obtained at a particular place or in a particular manner, and the plaintiffs did not happen to make a search in that particular place and especially since they had never been put on notice and were wholly ignorant of the existence in any place of the facts upon which to base an action, this Court does not think their ignorance is wilful nor the result of any negligence on their part.

"In view of the facts and circumstances, therefore, as disclosed in this record and in view of what this Court understands to be the jurisprudence of this State on this issue, the plea of prescription must be overruled.

"Let judgment be rendered in accordance with these views.

"(Signed) John T. Hood, District Judge."

It is ordered, adjudged and decreed by the judgment appealed from that there be judgment in favor of plaintiffs and against defendants, Frank B. Caffall, the Caffall Implement Company, Inc., a corporation, and the Caffall Oil Corporation, in solido, for the full sum of $5,734.20, with 8% per annum interest thereon from August 6, 1920 and 10% additional on the aggregate amount of principal and interest as attorney's fees, and all costs of this suit.

It is further ordered, adjudged and decreed that, as to the plaintiffs herein, the Caffall Implement Company, Inc., became the assumer in law of the obligations of Frank B. Caffall, as well as the assumer by express stipulation in 1923; that the Caffall

Oil Corporation is a mere re-incarnation of the Caffall Implement Company, Inc., and its organization and transfer of all of the assets of the Caffall Implement Company, Inc., to the Caffall Oil Corporation was, as to the plaintiffs, simulated and fraudulent in law and without any effect upon plaintiffs, and that as to the plaintiffs, the Caffall Oil Corporation became the assumer in law of the obligations of the Caffall Implement Company, Inc., if not an assumer by conventional agreement, including the debt due the plaintiffs.

It is further ordered, adjudged and decreed that all of the property herein described be ordered seized, advertised and sold, according to law, as though no sale or transfer had been made by the Caffall Implement Company, Inc., to the Caffall Corporation, to pay and satisfy the judgment rendered herein and that, from the proceeds of the sale of said property, this judgment in principal, interest, attorney's fees and all costs be paid by preference and priority over all other creditors of the said defendants.

It is further ordered, adjudged and decreed that all other demands of the plaintiffs be rejected and the pleas of prescription and all other defenses urged by the defendants be overruled and disallowed.

Plaintiffs were dissatisfied with the rejection of their demands as to the item of $3,107.47, and took a devolutive appeal to this court.

Defendants answered the appeal, and pray that the judgment appealed from be reversed, except as to the rejection of the

item of $3,107.47, and that in this particular that the judgment be affirmed.

We find no error in the judgment appealed from.

Judgment affirmed.

HIGGINS, J., absent.