567 So.2d 793 (1990)
Patrick J. PASTOR, Plaintiff-Appellee-Appellant,
v.
LAFAYETTE BUILDING ASSOCIATION & Dallas Credeur, Defendant-Appellant (LBA)-Appellees.
No. 89-462.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
*794 McBride, Foret, Rozas & Leonard, James R. Leonard, Lafayette, for plaintiff-appellee-appellant.
Wm. Hugh Mouton, Lafayette, for defendant-appellant-appellee.
John A. Mouton III, Lafayette, for defendant-appellee.
Before DOUCET, YELVERTON and KING, JJ.
DOUCET, Judge.
The defendant, Lafayette Building Association, appeals a judgment rendered against it and in favor of the plaintiff, Patrick J. Pastor.
On September 11, 1980, Patrick J. Pastor sold a parcel of land with improvements to Gene Glass for $150,000.00. By the terms of the sale, American Bank and Trust Company of Lafayette received a $100,000.00 first mortgage, the plaintiff received a $50,000.00 second mortgage.
On March 4, 1983, Gene Glass sold the property to Charles Magnon for $200,000.00. A $150,000.00 first mortgage on the property went to Lafayette Building Association (LBA). The plaintiff retained a $50,000.00 second mortgage.
Prior to agreeing to subordinate his interest to an additional $50,000.00 on the first mortgage, Mr. Pastor met with Dallas Credeur, Vice-President and Controller for LBA. He was shown an appraisal which valued the property at $200,000.00 to $222,000.00, reflecting proposed improvements to the property and land acquisitions. The net value of the land without the proposed improvements and acquisitions was $133,139.00.
The plaintiff further alleges that Mr. Credeur told him that if he subordinated to the additional amount, he would be in the same position as he had been previously. The plaintiff further alleged that Mr. Credeur told him that Mr. Magnon had equity in rental property in excess of the value of the loan. Plaintiff alleges that as a result of these representations, he agreed to the subordination.
At the loan closing, the entire proceeds of the loan from LBA were disbursed to Mr. Magnon against the instructions of the Board of Directors of LBA, and in spite of *795 the fact that none of the proposed improvements had been made.
Mr. Magnon defaulted on his debt to LBA without ever making a payment. LBA filed suit for executory process. The property was seized and sold at Sheriff's sale on April 4, 1984. Prior to the sale, the property was appraised as having a value of $140,240.00. At the Sheriff's sale, LBA bid in the property for $101,000.00. On October 4, 1984, Patrick J. Pastor filed this suit alleging damages resulting from the negligent misrepresentations of LBA which caused him to subordinate to an additional $50,000.00. The defendant filed exceptions of prescription and no cause of action which the trial court denied.
The trial judge found that the defendant, LBA, had, in fact, caused damage to the plaintiff by negligent misrepresentation. He awarded judgment in favor of the plaintiff and against the defendant LBA in the amount of $24,642.00. The plaintiff appeals the amount of damages only. The defendant appeals the judgment citing six assignments of error.

NEGLIGENT MISREPRESENTATION
The defendant, by three of its assignments of error, argues that any duty owed by it was discharged by the communication of correct information and that as a result plaintiff had no cause of action.
To determine the liability of LBA we will use the duty-risk analysis.
"The following questions are considered in this analysis:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) Was there a duty owed by the defendant to protect the plaintiff from this type of harm arising in this manner?
(3) Did the defendant violate the duty owed?
See Mart v. Hill, 505 So.2d 1120 (La. 1987); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Crowe, The Anatomy of a Tort, 22 Loy. L.Rev. 903 (1976); McNamara, The Duties and Risks of the Duty-Risk Analysis, 44 La.L.Rev. 1227 (1984)."
Cypress Oilfield Contr. v. McGoldrick Oil, 525 So.2d 1157, 1161 (La.App. 3rd Cir.1988), writ denied, 530 So.2d 570 (La.1988).
Whether or not LBA's conduct was a cause-in-fact of the harm is a question of fact to be determined by the trial court. Its finding of fact will not be disturbed on appellate review unless the evidence in the record does not furnish a basis for the finding, or the finding is clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973); LBA's conduct will be considered a cause in fact of Mr. Pastor's harm if it in any way contributed to that harm. Cypress Oilfield Contr. v. McGoldrick Oil, supra.
Mr. Pastor's testimony indicates that he relied on the appraisal supplied to him by LBA which indicated that improvements would be done which would increase the value of the property. He further relied on their assurances that he would be in the same position as prior to the sale. For this to be true, it was necessary that the improvements be done. The trial court found that LBA's conduct was a cause in fact of Mr. Pastor's harm. We find that the record furnishes a reasonable basis for the finding. We are unable to say it was clearly wrong.
Next, we must address the existence of a duty.
Whether or not a duty exists is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La. 1984). La.C.C. art. 2315 states in part:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
La.C.C. art. 2316 states:
"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
These articles encompass a cause of action for negligent misrepresentation. Devore v. Hobart Manufacturing Company, 367 So.2d 836 (La.1979); Dohmann v. United Gas Pipeline, 457 So.2d 307 (La.App. 3rd Cir.1984); Beal v. Lomas *796 and Nettleton Co., 410 So.2d 318 (La.App. 4th Cir.1982). In order for the doctrine to apply three circumstances must concur: (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty; and (3) the breach must have caused damages to the plaintiff. Dohmann v. United Gas Pipeline, supra; Beal v. Lomas and Nettleton Co., supra. These factors are simply the core of the duty-risk analysis.
Cypress Oilfield Contr. v. McGoldrick Oil, supra, at pp. 1161-1162.
LBA argues that any duty owed by it was discharged because it gave Mr. Pastor only correct information. The record however, does not support this allegation.
Mr. Pastor was led to believe that if he subordinated his interest to the additional amount he would be in the same position as previously. However, LBA failed to do what was necessary to assure the truth of this. For this representation to be true, it was necessary that improvements be made to the property. Rather than disbursing the loan funds in such a way as to assure that the improvements were made, LBA disbursed the funds all at one time, in violation of their own policies and in spite of instructions to the contrary from the Board of Directors.
LBA had no duty to supply any information to Mr. Pastor, who was not a customer for this transaction and to whom it owed no fiduciary duty, in connection with this transaction. However, once it volunteered information, it assumed a duty to insure that the information volunteered was correct. The duty assumed by LBA to insure that such information volunteered was correct encompassed the risk that Mr. Pastor would rely on the misrepresentation and suffer the damages it sustained. Cypress Oilfield Contr. v. McGoldrick Oil, supra. LBA breached that duty and we are unable to find error in the trial court's finding of liability on the part of LBA under a theory of negligent misrepresentation.

CONTRIBUTORY NEGLIGENCE/ASSUMPTION OF THE RISK
The defendant next argues that the plaintiff's claim is partially barred by contributory negligence or, alternatively, that it is totally barred by assumption of the risk.
"[T]he common law doctrine of assumption of risk no longer has a place in Louisiana tort law. The types of plaintiff conduct which the defense has been used to describe are governed by civilian concepts of comparative fault and duty/risk. Assumption of risk should not survive as a distinct legal concept for any purpose, and certainly can no longer be utilized as a complete bar to the plaintiff's recovery.
Because the term "assumption of risk" is almost always used to describe plaintiff conduct that is indistinguishable from contributory negligence, it would make no sense for us to hold otherwise. Under article 2323, plaintiff negligence results only in a comparative reduction of recovery, and it would be anamolous for us to hold that the same conduct which results only in a reduction of recovery when it is described as "comparative negligence" somehow should operate as a total bar to recovery when described as "assumption of risk." As another state supreme court considering this issue has concluded, "it would be the ultimate legal inconsistency to reject contributory negligence as an absolute defense yet at the same time allow its effect to continue under the guise of assumption of risk." Salinas v. Vierstra, 107 Idaho 984, 695 P.2d 369, 374 (1985).
* * * * * *
Thus, in any case where the defendant would otherwise be liable to the plaintiff under a negligence or strict liability theory, the fact that the plaintiff may have been aware of the risk created by the defendant's conduct should not operate as a total bar to recovery. Instead, comparative fault principles should apply, and the victim's "awareness of the danger" is among the factors to be considered *797 in assessing percentages of fault. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 974 (La.1985)."
Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988).
Therefore, the plaintiff's conduct need only be considered from a contributory negligence, or comparative fault, standpoint.
The trial judge did not address the issue of comparative fault. This is to be considered a rejection of that defense by the trial court. Cypress Oilfield Contr. v. McGoldrick Oil, supra. The existence of comparative fault is a question of fact and the finding of the trial court in this regard will not be disturbed where the record on appeal furnishes an adequate basis for the finding and the finding is not clearly wrong. Canter v. Koehring, supra.
Again using the duty-risk analysis, it must be determined whether Mr. Pastor's own conduct was a cause-in-fact of his damages. The party urging the defense has the burden of proving contributory negligence. Simmons v. Beauregard Parish School Board, 315 So.2d 883 (La.App. 3rd Cir.1975), writ denied, 320 So.2d 207 (La.1975).
We find nothing in the record to suggest this. Although Mr. Pastor made no independent inquiry into Mr. Magnon's financial situation, none would have been needed had LBA properly administered its loan to Mr. Magnon. Once the funds were disbursed, it was too late. The defendants have failed to show any means by which Mr. Pastor could have seen to it that the improvements were done to the property so as to provide adequate security for the second mortgage. As a result, we find no comparative fault on behalf of Mr. Pastor and, therefore, no error in the finding of the trial court.

PRESCRIPTION
The defendant finally argues that the plaintiff's cause of action had prescribed because more than one year passed between the date of the sale by Glass to Magnon and the filing of the suit.
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.
La.C.C. art. 3492.
Under La.C.C. 3492, the focus is mainly on the time the damage is sustained rather than on the time of the commission of the tortious act. Duhon v. Saloom, 323 So.2d 202 (La.App. 3rd Cir.1975), writ denied, 325 So.2d 794 (La.1976); Mitchell v. Dairyland Ins. Co., 405 So.2d 1233 (La.App. 1st Cir. 1981).
Mr. Pastor did not sustain any damages on the date he subordinated his interest to the additional sum. It was not until Mr. Magnon actually defaulted that Mr. Pastor could have been said to have sustained damage as a result of the misrepresentation. Even then, however, prescription would not have begun to run.
"Basically, prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, as long as such ignorance is not willful and does not result from his neglect. Walter v. Caffall, 192 La. 447, 188 So. 137 (1939); Bewley Furniture Co. v. Maryland Casualty Co., 271 So.2d 346 (La.App. 2d Cir.1972), amended 285 So.2d 216 (La.1973); see Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952)."
Dean v. Hercules, Inc., 328 So.2d 69 (La. 1976).
Therefore, prescription would not have begun to run against Mr. Pastor's claim until he was aware that Mr. Magnon was in default on the LBA loan, and that the collateral was insufficient to secure both the first and second mortgages. Awareness of default alone is not enough because, had the loan been disbursed properly, Mr. Pastor's position would have been one of the same as it had been prior to the sale to Mr. Magnon. Proper disbursement would have assured that either the improvements were made, increasing the value of the collateral to an amount sufficient to secure the entire debt; or, that if no improvements were made, no funds would be disbursed assuring that the amount of *798 the debt did not exceed the value of the collateral.
There is no evidence to suggest that Mr. Pastor could have known the exact amount of the indebtedness by Mr. Magnon to LBA or that the collateral was inadequate until the executory process was filed by LBA. Therefore, we find that prescription began to run on the date that the executory process was filed on January 20, 1984. Since this suit was filed in October, 1984, the action was not barred by prescription. Accordingly, the trial court correctly denied the defendant's Exception of Prescription.

DAMAGES
The plaintiff appeals only the issue of damages, arguing that the award was improperly calculated. After reviewing the evidence presented on the issue of damages, we find no error in the trial judge's calculation of damages.
For the reasons assigned, we affirm the judgment of the trial court. Costs of this appeal are assessed to the defendant-appellant.
AFFIRMED.