NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-488

ENRICO BUNYOG, ET AL.

VERSUS

BERKLEY INS. CO., ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 258,686
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.

REVERSED AND REMANDED.

Conery, J., concurs in the result and assigns reasons.

**Jerold Edward Knoll**
**The Knoll Law Firm, LLC**
**P. O. Box 426**
**Marksville, La 71351**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Enrico Bunyog**
    **Vanessa Bunyog**
    **Arielle Hope Bunyog**

**Michael Thomas Johnson**
**Jeffrey S. Ingram**
**Johnson, Siebeneicher, & Ingram, Inc.**
**P. O. Box 7598**
**Alexandria, LA 71306**
**(318) 484-3911**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Rapides Parish School Board**
    **Berkley Insurance Co.**

**Jennifer Jones Thomas**
**Deborah Johnson Juneau**
**Kean Miller LLP**
**P. O. Box 3513**
**Baton Rouge, LA 70821-3513**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Cenla Area Agency on Aging, Inc.**

**PERRET, Judge.**

Plaintiffs-Appellants Enrico Bunyog and Vanessa Bunyog, individually and on behalf of their minor daughter, Arielle Hope Bunyog, ("the Bunyogs"), appeal the trial court's judgment granting an exception of prescription in favor of Defendant-Appellee, Cenla Area Agency on Aging, Inc. ("Cenla"), and dismissing Plaintiffs' claims against it. For the following reasons, we reverse the judgment of the trial court.

**FACTUAL AND PROCEDURAL BACKGROUND:**

On October 4, 2016, Arielle Hope Bunyog ("Hope"), was a five-year-old severely autistic student enrolled in the "pre-K ESCE-Autism" class at L.S. Rugg Elementary School ("L.S. Rugg"). When Mrs. Bunyog picked up Hope from school, she was informed that Hope had been found on the playground disoriented and unable to walk. L.S. Rugg staff was unable to explain what had happened to Hope. Mr. and Mrs. Bunyog later took Hope to Rapides Regional Medical Center Emergency Room where it was discovered that Hope had a right transverse femur fracture and a concussion.

On April 21, 2017, the Bunyogs filed suit against L.S. Rugg and Rapides Parish School Board ("RPSB"). The Bunyogs alleged that Defendants were liable *in solido* to them for the injuries Hope sustained. A First Amended and Supplemental Petition for Damages, filed on May 30, 2017, added RPSB's insurer, Berkley Insurance Company ("Berkley"), as a defendant and deleted L.S. Rugg as a defendant. The Bunyogs propounded discovery to L.S. Rugg and RPSB with the original petition, but responses were not received until June 27, 2017. RPSB's

responses indicated that Delgado/Delucas[1] was a "Foster grandparent at Rugg Elementary" who was present when Hope was on the playground. No further information was provided on Delgado/Delucas.

On October 30, 2017, the Bunyogs filed a Second Supplemental and Amending Petition for Damages adding Mary Delgado ("Delgado/Delucas"), Cenla, and XYZ Insurance, Co. as Defendants, which was served on Cenla on November 7, 2017. In their Second Supplemental and Amending Petition the Bunyogs further assert that Defendants are "justly and truly indebted and liable *in solido* to plaintiffs" for all damages arising from this incident and argue that the petition is timely as it "arises out of the same transaction or occurrence as stated in the original Petition for Damages[,]" thus allowing it to relate back to the original petition. Several allegations regarding Delgado/Delucas, her relationship with Cenla, and her alleged role in Hope's injury were also added. On a later date, during discussions between counsel after RPSB's discovery responses were returned to Plaintiffs, the Bunyogs learned that a "Foster grandparent" was not simply the grandparent of a foster child, but, instead, a volunteer with the Foster Grandparent Program related to Cenla's agency that worked with RPSB.

In response to the Bunyogs' Second Supplemental and Amending Petition, Cenla filed an exception of prescription asserting that it is a "wholly new and unrelated defendant[,]" who was unaware of the incident and, therefore, the claim against Cenla is "tantamount to a new cause of action which already prescribed[.]" In their opposition to prescription, the Bunyogs allege that it was not until June 27, 2017, in RPSB's discovery responses that they learned that one of the two adults

---

[1] Mary Delgado was named as a Defendant in the pleadings, however in RPSB's discovery responses, the name "Mary Delucas" is used as the foster grandparent.

supervising Hope was not a RPSB employee. The Bunyogs argue that their claims against Cenla and Ms. Delagado/Delucas not only relate back to their original petition, but also that prescription was interrupted because Defendants are all joint and/or solidary tortfeasors, and that prescription was tolled under the doctrine of *contra non valentem*. RPSB's discovery responses were attached as an exhibit to the opposition. Lastly, the Bunyogs argue in their opposition to prescription that there is an identity of interest between RPSB and Cenla which would infer notice of the suit and would support the finding that the Second Supplemental and Amending Petition relates back to the original timely filed petition.

A hearing was held on the exception on February 5, 2018. The trial court granted judgment in favor of Cenla finding that the Bunyogs could not meet the factors set forth in *Ray v. Alexandria Mall*, 434 So.2d 1083 (La.1983). Prior to the signing of judgment, RPSB requested a re-hearing as it was not served with the hearing notice. RPSB also filed a memorandum in opposition to the exception, echoing the Bunyog's assertions of relation back and interruption of prescription. RPSB alleges, as did the Bunyogs, that it was not until discussions between counsel after RPSB's discovery responses were sent that the Bunyogs learned a "Foster grandparent" was not simply the grandparent of a foster child, but was, instead, a volunteer with the Foster Grandparent Program administered by Cenla.

The re-hearing was held on April 9, 2018. For a second time, the trial court granted judgment in favor of Cenla based on the Bunyogs' inability to meet the *Ray* factors. The Bunyogs now appeal this judgment alleging the following assignments of error:

> 1. The [t]rial [c]ourt erred in not finding that prescription was interrupted against [Cenla] and [Delgado/Delucas] by the timely filing of the Petition for Damages against RPSB pursuant to Louisiana Civil Code article 2324(C).

3

2.     The [t]rial [c]ourt erred in not finding that the equitable doctrine of *contra non valentum* applied to toll prescription against [Cenla] and [Delgado/Delucas] until their identity could be discerned through discovery.

3.     The [t]rial [c]ourt erred by only considering the relation back doctrine in granting the Peremptory Exception of Prescription filed by [Cenla].

Additionally, although not listed as an assignment of error, the Bunyogs assert as Issue Presented for Review, and discuss in their brief, the argument that the grant of Cenla's motion was premature given the limited facts adduced through discovery regarding the relationship between RPSB, Cenla, and Delgado/Delucas.

**STANDARD OF REVIEW:**

"When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review." *Specialized Loan Servicing LLC v. January*, 12-2668, pp. 3-4 (La. 6/28/13), 119 So.3d 582, 584 (citations omitted). "[F]actual findings . . . such as the date on which prescription begins to run, are reviewed under the manifest error-clearly wrong standard of review." *Roberts v. USAA Cas. Ins. Co.*, 14-384, p. 4 (La.App. 1 Cir. 11/7/14), 168 So.3d 418, 420. However, "the proper application and interpretation of a statute or article is a question of law." *Id.*

**DISCUSSION:**

It is well established that "[p]rescriptive statutes are strictly construed in favor of maintaining a plaintiff's cause of action; absent clear, contrary legislative intent[.]" *Williams v. Jackson Par. Hosp.*, 00-3170, p. 13 (La. 10/16/01), 798 So.2d 921, 930. The trial court applied La.Code Civ.P. art. 1153, and not La.Civ.Code art. 2324 or the doctrine of *contra non valentem.* Louisiana Code of Civil Procedure Article 1153 permits an amended petition to relate back to the original petition for purposes

4

of prescription when "the action or defense asserted in the amended petition . . . arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original[.]"  The supreme court in *Ray*, 434 So.2d at 1087, set forth factors for determining whether Article 1153 permits an amendment to relate back:

(1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;
(2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
(3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;
(4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.

However, the supreme court has also found that "LSA-C.C.P. art. 1153 is inapplicable to the situation where a plaintiff has timely sued and correctly named at least one solidary obligor, or when articles of the Civil Code are applicable." *Etienne v. Nat'l Auto. Ins. Co.*, 99-2610, p. 7 (La. 4/25/00), 759 So.2d 51, 56-7. Thus, as discussed below, under the facts of this case we find that La.Code Civ.P. art. 1153 does not apply here.

**<u>Assignment of Error Number One:</u>**

In their first assignment of error, the Bunyogs assert prescription was interrupted as to Cenla due to their timely filing against joint tortfeasors.  "[I]f on the face of the petition it appears that prescription has run, . . . the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period." *Younger v. Marshall Indus., Inc.*, 618 So.2d 866, 869 (La.1993).  Louisiana Civil Code Article 2324 provides that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors."  When the plaintiffs' basis for claiming interruption of prescription is La.Civ.Code art. 2324, the plaintiffs bear the

burden of proving that solidary or joint tortfeasor status. *Younger*, 618 So.2d 866; *see also Rizer v. Am. Sur. & Fid. Ins. Co.*, 95-1200 (La. 3/8/96), 669 So.2d 387. But, "[a]bsent solidarity between the entities, the interruption of prescription as to the claims asserted . . . may still occur by virtue of La.Code Civ.P. art. 1153." *Hunt v. La. Mun. Risk Mgmt. Agency*, 14-456 (La.App. 3 Cir. 4/22/15), 176 So.3d 1110, 1113, *writ denied*, 15-949 (La. 8/28/15), 176 So.3d 404.

Tort actions are subject to a liberative prescriptive period of one year, which begins to run on the day of the injury or damage. La.Civ.Code art. 3492. Cenla and Delgado/Delucas were added as Defendants in the Bunyogs' Second Supplemental and Amending Petition, filed more than one year after the incident. Therefore, the claims against Cenla were prescribed on the face of the petition and the Bunyogs had the burden of proving joint or solidary liability status between Cenla, RPSB, Berkley, and Delgado/Delucus.

Cenla argues that the Bunyogs' Second Supplemental and Amending Petition only alleges solidary liability among Defendants and, furthermore, that the Bunyogs have not carried their burden in proving solidary liability or joint liability.

Although the Bunyogs argued in their pleadings and in the trial court that the joint and solidary relationship of Defendants interrupted prescription, the trial court was silent regarding whether the Bunyogs carried their burden of proving that status. Instead, the trial court only discussed the Bunyogs' failure to prove relation back. The trial court stated at the first hearing on the issue: "The Court has reviewed the *Ray*[, 434 So.2d 1083] case. And based upon those factors, if they cannot be met, it will be prescribed. So the Court's going to grant the Exception of Prescription." The trial court then stated at the rehearing: "The Court will maintain the Exception of Prescription. And based upon the factors in *Ray*, as the Court went

through before, that the factors cannot be met. So the Court will maintain the Exception of Prescription." Finally, the judgment states: "Considering the pleadings, memoranda on file, argument of counsel, and for oral reasons assigned: **IT IS ORDERED** that the Exception of Prescription filed on behalf of Cenla Area Agency on Aging, Inc. be and is hereby **GRANTED**[.]"

"The jurisprudence is settled that all of the issues presented by the pleadings upon which evidence has been offered will be considered as having been disposed of by final judgment in the cause, and any demand passed over in silence will be considered as having been rejected by the trial court." *Maricle v. Casablanca Convertors, Inc.*, 546 So.2d 275, 277 (La.App. 3 Cir. 1989). Therefore, we can surmise that the trial court rejected the Bunyogs' argument of interruption and suspension of prescription, then considered whether the petition related back under the *Ray* factors to fully determine whether the Bunyogs' claim against Cenla could be maintained under any article or doctrine.

Thus, we first must determine whether the trial court was manifestly erroneous in determining that the Bunyogs failed to sufficiently plead joint or solidary liability between Defendants in order to interrupt the running of prescription against Cenla.

Louisiana Civil Code Article 2324 states:

> A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such an act.
>
> B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. . . .
>
> C. Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.

7

The Bunyogs only alleged in their petition that Defendants were solidary tortfeasors, specifically, and did not use the phrase "joint tortfeasor" or "jointly" liable in the Second Supplemental and Amending Petition. However, "Louisiana is a fact pleading state that values substance over form . . . . When legally permissible, a petition should be maintained against a peremptory exception to afford a party his day in court." *Wheat v. Nievar*, 07-680, p. 5 (La.App. 1 Cir. 2/8/08), 984 So.2d 773, 776; *see also Teachers' Ret. Sys. of La. v. La. State Emp. Ret. Sys.*, 456 So.2d 594 (La.1984).

Joint liability is present where the negligence of two or more persons combines to cause injury to a third person. La.Civ.Code art. 2324. "The term 'joint tortfeasor' may be applied both to the situation where two or more persons are acting in concert, or where '[t]he negligence of concurrent tortfeasors . . . occurs or coalesces contemporaneously,' to produce an injury." *Milbert v. Answering Bureau, Inc.*, 13-22, (La. 6/28/13), 120 So.3d 678, 688.

The Bunyogs' original petition alleged:

XIV.
HOPE's femur fracture is the type and nature that is caused by a traumatic fall or bending injury. It does not typically occur absent trauma, and was further accompanied by a concussion.

XV.
L.S. RUGG employees negligently failed to been [sic] adequately supervise [sic] HOPE on the playground, resulting in the aforesaid injuries. Therefore, HOPE's injuries were caused by the acts or omissions of L.S. RUGG's employees

XVI.
HOPE is non-verbal; L.S. RUGG staff were not supervising HOPE when she was injured; thus there is no eye-witness account of what exactly happened.

In their Second Supplemental and Amending Petition for Damages, the Bunyogs further alleged:

VI(a).

On October 4, 2016, defendant, MARY DELGADO . . . was a "Foster Grandparent" with the defendants, CENLA AREA AGENCY on AGING, INC. . . . in its "Foster Grandparent Program" assigned to assist in supervising the children at L.S. Rugg Elementary School, all with the permission and consent of defendant, RPSB.

. . . .

VI(b).

Defendant, DELGADO, was one of two adults on the playground supervising the Pre-K Autism Class at L.S. Rugg Elementary on the afternoon of October 4, 2016 when ARIELLE HOPE BUNYOG . . . was injured.

. . . .

XV

L.S. Rugg employees, as well as DELGADO, failed to adequately supervise HOPE on the playground resulting in the aforesaid injuries. HOPE's injuries were caused by the acts or omissions of L.S. Rugg employees and/or DELGADO, Foster Grandparent, while in the course and scope of her employment/duties with CENLA.

The facts pled in the Second Supplemental and Amending Petition demonstrate, at a minimum, some fault on the part of Delgado/Delucas while in the course and scope of her employment/duties with Cenla and, thus, allegations of joint liability with RPSB. Therefore, we find merit to the Bunyogs' first assignment of error and find that the trial court was manifestly erroneous in determining the Bunyogs did not carry their burden in proving joint liability at this stage in the proceedings.

Cenla further asserts that the *Ray* factors must still be met where joint liability is alleged. As stated above, we find no merit to the argument that the *Ray* factors apply to this case. Our supreme court has determined La.Code Civ.P. art. 1153 is inapplicable where the argument against prescription is interruption based on solidary or joint liability. *Etienne*, 759 So.2d at 56-7; *see also Wheat*, 984 So.2d at 776 ("Once a plaintiff establishes that a joint or solidary tortfeasor has been timely

9

sued, consideration of the concept of relating back to interrupt prescription is not necessary."). At the first hearing on the exception, Cenla argued that this court recently decided a similar case based on the *Ray* factors, *Hunt*, 176 So.3d 1110. However, in *Hunt*, this court specifically noted that there was no solidarity between the defendants. We find no merit to this argument.

## Assignment of Error Number Two:

In their second assignment of error, the Bunyogs argue that the doctrine of *contra non valentem* applies and suspended prescription as to Cenla. As with the issue of joint liability, the trial court was silent regarding this theory in its oral reasons and judgment. Therefore, we will assume the trial court rejected the Bunyogs' argument.

> The doctrine of contra non valentem applies as an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. The Court has recognized four instances where *contra non valentem* can apply: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's actions; (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; or (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Specialized Loan Serv.*, 119 So.3d at 585. Only the fourth category may apply in the current case. Prescription may be suspended "where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Id*. However, the doctrine of *contra non valentem* only applies in 'exceptional circumstances.'" *Id*. (quoting La.Civ.Code art. 3467 cmt. (d)).

10

"For the fourth category to apply, the plaintiff's ignorance of his cause of action cannot be attributable to his own willfulness or neglect, as a plaintiff is deemed to know what he could have learned by reasonable diligence." *Edwards v. Alexander*, 42,000, p. 21 (La.App. 2 Cir. 6/6/07), 960 So.2d 336, 348, *writ denied*, 07-1317 (La. 9/28/07), 964 So.2d 371. However:

> [s]imply because these facts may have been obtained at a particular place or in a particular manner, and the plaintiffs did not happen to make a search in that particular place and especially since they had never been put on notice and were wholly ignorant of the existence in any place of the facts upon which to base an action, this Court does not think their ignorance is wilful nor the result of any negligence on their part.

*Walter v. Caffall*, 192 La. 447, 467, 188 So. 137, 143 (1939).

In the current case, Hope's injuries occurred at school. The Bunyogs were reasonable in believing those in charge of her supervision were school employees. It was not until RPSB answered discovery that the Bunyogs learned one of the supervisors was not an RPSB employee, but Delgado/Delucas, a "Foster parent."

The discovery sought the name, address, and employer/employment title of any person with knowledge of the incident. The Bunyogs also sought any investigative reports related to the incident. RPSB's responses only identify "Mary Delucas[,] Foster grandparent at Rugg Elementary" without additional employment or contact information. Statements provided by RPSB indicated Delgado/Delucas was with or around Hope when the incident happened, but they did not provide further information regarding who Delgado/Delucas was, or that she was working or volunteering through Cenla.

Cenla argues that a simple search of the Foster Grandparent Program in Rapides Parish would lead the Bunyogs to discover Cenla. However, it is not reasonable to assume "Foster grandparent" would lead the Bunyogs to conclude

anything more than the fact that this person was present as a child's foster grandparent, let alone that there is an agency or program similarly titled providing volunteer services to schools in the parish.

Once further conversations with RPSB's counsel ensued and the Bunyogs learned of Delgado/Delucas, Cenla, and the Foster Grandparent Program, they added Delgado/Delucas and Cenla as Defendants. We find the failure to discover Delgado/Delucas' identity, the Foster Grandparent Program, and, thus, Cenla's idenity was not attributable to the Bunyogs' own willfulness, neglect, or failure to follow through with reasonable diligence. Thus, under the facts of this case, we find the trial court was manifestly erroneous in not applying the doctrine of *contra non valentem.*

**Assignment of Error Number Three and Issue Number Four:**

In their third assignment of error and fourth Issue Presented for Review, the Bunyogs allege that the trial court erred by only considering the relation back doctrine and that the granting of the exception was premature. Based on our findings above, the third assignment of error has already been addressed and the fourth issue is rendered moot.

**CONCLUSION:**

For the reasons discussed above, we reverse the judgment of the trial court and remand the case to the trial court for further proceedings. All costs of these proceedings are taxed to Cenla Area Agency on Aging, Inc.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

12

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-488

ENRICO BUNYOG, ET AL.

VERSUS

BERKLEY INS. CO., ET AL.

Conery, J., concurs in the result and assigns reasons.

I join in the majority's reversal of the trial court's ruling in this matter. However, I do not find this case warrants application of *contra non valentem*. Notably, several months before prescription ran in October 2017, the plaintiffs received a full accident report with the names of persons present on the day of the accident. That information, coupled with the fact that the plaintiffs' daughter attended the school, permitted further inquiry into the names and contact information of those the plaintiffs allege to have failed to supervise their daughter. And, that time period was adequate to permit counsel to depose—or take witness statements of—those involved. Despite such opportunity, the plaintiffs have not further amended their petition to state with particularity whether Cenla and Delgado/Delucas had a duty to supervise and/or how they may have breached that duty.

I do, however, recognize that the face of the supplemental petition at least thinly alleges facts regarding the identity of interest between RPSB and Cenla and/or Delgado/Delucas. While the indication of connexity is slight, I concur in the result reached by the majority as I would leave consideration of the parties' status for future proceedings. Importantly, an exception of prescription may be re-urged at any time as described within the confines of La.Code Civ.P. arts. 927 and 928(B).

For these reasons, I concur in the result.