893 So.2d 119 (2005)
Sally CHAMPAGNE
v.
Stephen F. BRINT, M.D., et al.
No. 2004-CA-1128.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 2005.
Rehearing Denied February 24, 2005.
*120 Robert C. Stern, Robert C. Stern, L.L.C., New Orleans, LA, for Plaintiff/Appellant.
George E. Cain, Jr., Rosalind Young, Kendra Macquet, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS SR., Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
In this appeal, plaintiff Sally Champagne contends that the trial court erred in granting defendant Dr. Brint's Exception of Prescription. For the reasons set forth below, we reverse.

FACTS AND PROCEDURAL HISTORY
This lawsuit arises out of two separate radial keratotomy (RK) procedures performed by Dr. Brint on the plaintiff. Dr. Brint, a board-certified ophthalmologist, performed the first of the two procedures on plaintiff's right eye on August 29, 1988. He performed the same procedure on the plaintiff's left eye on November 7, 1988. Mrs. Champagne continued to see Dr. Brint on a periodic basis for follow-up treatment until March 31, 1993, which was the date of the last contact between Dr. Brint and the plaintiff. On April 28, 1993, plaintiff first saw Dr. Richard Bessent, another ophthalmologist, who informed her at that visit that she had developed cataracts in her eyes. Thereafter, Dr. Bessent sent plaintiff to see Dr. Kastl at the Tulane Medical Center for an additional opinion. In November 1993, after obtaining Dr. Kastl's opinion, Dr. Bessent informed plaintiff that her cataracts were induced by the over application of steroids. Plaintiff avers that the November 1993 consultation was the first time she was aware of the fact that she had a medical malpractice action against Dr. Brint.
On September 23, 1994, appellant submitted a complaint to the Louisiana Patient's *121 Compensation Fund setting out her claim of malpractice against Dr. Brint, pursuant to the requirements of the Louisiana Medical Malpractice Act. She alleged in her complaint that Dr. Brint negligently performed the RK procedures and improperly prescribed steroidal eye drops for the plaintiff's use during the follow-up treatment. A Medical Review Panel reviewed the complaint and rendered a decision on March 4, 1996 that the evidence did not support the conclusion that Dr. Brint failed to meet the standard of care.
Plaintiff filed the instant lawsuit on May 31, 1996. Dr. Brint filed an Exception of Prescription and/or Peremption, alleging that under La. R.S. 9:5628, plaintiff was reasonably aware of the factual grounds for her claim, at the latest, on April 28, 1993, when she was informed by Dr. Bessent that she had developed cataracts in her eyes, such that her complaint against him was prescribed. After a hearing, the trial court granted the exception.
On appeal, this court reversed the trial court, citing an incomplete record. Champagne v. Brint, et al., XXXX-XXXX (La.App. 4 Cir. 9/17/03), 853 So.2d 1142. This court found that plaintiff's claims were not prescribed on the face of the petition, and thus the burden had shifted to Dr. Brint to prove the facts in support of the exception. Noting that no evidence, such as depositions or exhibits, had been introduced at the hearing to support the exception of prescription, this court found that Dr. Brint failed to meet his burden of proof for the exception of prescription.
On October 13, 2003, Dr. Brint again filed an Exception of Prescription and/or Peremption, based upon the same theories and facts presented in the first memoranda. At the hearing, defendant introduced into evidence depositions of Sally Champagne and Dr. Bessent, as well as the records of Drs. Bessent, Brint, and Kastl. Additionally, defendant introduced into evidence the office chart of Dr. Brint. Observing that he had granted the exception last time and would do the same thing this time, the trial court again granted the exception. Mrs. Champagne subsequently filed this appeal.

DISCUSSION
Plaintiff avers that the trial court erred in granting the Exception of Prescription.
The plaintiff's allegations against Dr. Brint are governed by the special prescriptive provision of LSA-R.S. 9:5628(A), which provides in pertinent part:
No action for damages for injury or death against any physician... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
The application of this statute to the facts of the instant case is obvious. If the tolling of prescription began on the date of the alleged act of malpractice, which was no later than March 31, 1993, the date of Dr. Brint's last treatment of the plaintiff, then this matter is prescribed.
Plaintiff invokes the "discovery" exception set out in R.S. 9:5628. Within the context of medical malpractice, application of the discovery rule generally has turned on the nature and timing of the plaintiff's knowledge of the factual basis for the claim. This knowledge can be either actual or constructive knowledge *122 and is judged on a reasonable person standard. Triss v. Carey, XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/7/01), 781 So.2d 613, 615. Constructive knowledge sufficient to commence the running of prescription requires more than a mere apprehension that something might be wrong. Griffin v. Kinberger, 507 So.2d 821 (La.1987). However, it is also something less than definite proof of a cause of action. Boyd v. B.B.C. Brown Boveri, Inc., 26,889, p. 9 (La.App. 2 Cir. 5/10/95), 656 So.2d 683, 689. As stated by the Court of Appeal, Second Circuit:
The focus is on the reasonableness of the inaction by plaintiff. The rule is whether the cause of action was known or reasonably "knowable" by plaintiff. Prescription does not run only as long as it is reasonable for plaintiff not to recognize that the condition may be related to treatment. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment... then the facts and cause of action are reasonably knowable to plaintiff.
Harlan v. Roberts, 565 So.2d 482, 486 (La.App. 2 Cir.1990).
This court has held that prescription runs from the time the claimant has actual or constructive knowledge of the tortious act, and such information was sufficient to excite attention and prompt further inquiry. National Council on Compensation Ins. v. Quixx Temporary Services, Inc., 95-0725 (La.App. 4 Cir. 11/16/95), 665 So.2d 120, 123-124. On the other hand, the doctrine of contra non valentem suspends the running of prescription when the claimant's cause of action is not known or reasonably knowable by the claimant even though his ignorance is not induced by the defendant. Wadsworth v. ABC Ins. Co., 98-0486 (La.App. 4 Cir. 12/9/98), 732 So.2d 56, writ denied, 99-0453 (La.4/1/99), 742 So.2d 558.
Plaintiff alleges in her petition that she did not become aware of the fact that the cataracts were possibly induced by the over application of steroids until November 1993. Plaintiff filed her medical malpractice complaint against Dr. Brint with the Louisiana Patient Compensation's Fund on September 27, 1994. Therefore, on the face of the petition, her claim has not prescribed. As such, the burden is on Dr. Brint to prove the facts to support the exception of prescription. See Johnson v. Holden Springs, Inc., XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/27/02), 811 So.2d 1123, 1125.
Dr. Richard Bessent testified that at plaintiff's initial visit in April 1993, he noticed the cataracts but "made no decision then as to what [he] thought was the etiology of those cataracts." He stated that he was "certain" that he did not inform plaintiff at that visit that the steroid use might have caused her cataracts. He further testified that he did not relate her cataracts to the use of corticosteroid drops until her visit on November 5, 1993.
In light of Dr. Bessent's testimony, we find that plaintiff did not have knowledge of sufficient facts to recognize that her cataracts might have been caused by the steroid drops until November 1993. Plaintiff's statement that in April 1993 she "felt like the RK was what was causing all [of her] problems" was no more than a "mere apprehension" that something might be wrong. According to Dr. Bessent, not even he related the cataracts to the steroid drops at that time. As such, we find that plaintiff had constructive knowledge of the alleged malpractice no earlier than November 1993, when Dr. Bessent first informed her of the possibility that the cataracts may have been caused by the steroid drops. Therefore, we find that the complaint was timely instituted within one year of the date of discovery.

*123 CONCLUSION

Accordingly, for the foregoing reasons, we conclude that the exception of prescription should have been denied, and we reverse the judgment of the trial court.
REVERSED.