PATRICIA RIVET MURRAY, Judge.
 

 1 iThis is a medical malpractice suit. The plaintiffs, Carrie Ferrara and her two adult children,
 
 [1]
 
 seek review of the trial court’s judgment granting the exception of prescription filed by the defendants, Starmed Staffing, L.P. (“Starmed”) and its employee, L. Waddell, R.N. We reverse.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Since the only issue presented on this appeal is prescription, the pertinent factual and procedural events are set forth in the following time line:
 

 • February 13, 2001 — Ms. Ferrara was a patient at Tulane University Medical Center (“Tulane”) and had undergone a colonoscopy. Ms. Waddell, who was Ms. Ferrara’s nurse, allegedly left Ms. Ferrara unattended in a bedside chair. While left unattended, Ms. Ferrara fell and fractured her left hip, requiring open reduction and internal fixation. This is the date of the alleged malpractice.
 

 • February 8, 2002 — Ms. Ferrara filed a medical malpractice complaint with the Louisiana Division of Administration naming as defendants Tulane and Nurse Jane Doe, a fictitious defendant.
 

 • April 16, 2002 — Ms. Ferrara filed an amended complaint naming Ms. Wad-dell as a defendant in Nurse Jane Doe’s place.
 

 • July 19, 2002 — Ms. Ferrara was informed that Ms. Waddell was not a qualified health care provider pursuant to La. R.S. 40:1299.41.
 

 1 ¾* August 9, 2002 — Ms. Ferrara filed the present medical malpractice suit naming as defendants Ms. Waddell and her employer, Starmed.
 

 • September 18, 2002 — Ms. Waddell and Starmed filed an answer.
 

 • June 4, 2004 — Ms. Waddell and Starmed amended their answer.
 

 • May 17, 2006 — The medical review panel that was convened to hear the complaint against Tulane rendered its opinion; the panel found that Tulane
 
 *864
 
 did not breach the applicable standard of care.
 

 • December 12, 2009 — Ms. Waddell and Starmed filed an exception of prescription.
 

 • February 22, 2010 — The trial court rendered judgment granting the exception of prescription and dismissing Ms. Ferrara’ suit.
 

 DISCUSSION
 

 On appeal, Ms. Ferrara assigns as error the trial court’s ruling sustaining the prescription exception. The prescriptive period for medical malpractice is set forth in La R.S. 9:5628(A), which provides:
 

 No action for damages for injury or death against any physician ... arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
 

 This statute “not only corresponds with the basic one year prescriptive period for delictual actions provided in La. Civil Code art. 3492, [but also] it embodies the discovery rule delineated as the fourth category of
 
 contra non valentón.” Campo v. Correa,
 
 01-2707, p. 9 (La.6/21/02), 828 So.2d 502, 509. Both the one-year and three-year periods set forth in La. R.S. 9:5628 are prescriptive periods, “with the qualification that the
 
 contra non valentón
 
 type exception to prescription embodied in the discovery rule is expressly made |.^inapplicable after three years from the act, omission, or neglect.”
 
 Zoulek v. PIP America,
 
 08-0550, p. 3 (La.App. 4 Cir. 12/10/08), 2 So.3d 511, 514 (quoting
 
 Borel v. Young,
 
 07-0419, p. 29 (La.7/01/08)(cm
 
 reh’g),
 
 989 So.2d 42, 69).
 

 Another pertinent provision is La. R.S. 40:1299.47(A)(2)(a) of the Medical Malpractice Act (“MMA”), which provides that when a medical review panel is timely confected, “[t]he filing of the request for a review of a claim shall suspend the time within which suit must be instituted, ... until ninety days following notification ... to the claimant or his attorney of the issuance of the opinion by the medical review panel.” Thus, the filing of a medical malpractice claim with a medical review panel triggers the suspension of prescription specially provided by the MMA, rather than the interruption of the liberative prescriptive period generally provided in the Civil Code.
 
 LeBreton v. Rabito,
 
 97-2221, p. 9 (La.7/8/98), 714 So.2d 1226, 1230. The filing of a request for review of a claim suspends the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
 
 See Edwards v. Alexander,
 
 42,000 (La.App. 2 Cir. 6/6/07), 960 So.2d 336.
 

 Citing the special prescription and suspension of prescription provisions in the MMA, the Louisiana Supreme Court recently held that the relation back doctrine under La. C.C.P. art. 1153 may not be applied to malpractice actions.
 
 Warren v. Louisiana Med. Mut. Ins. Co.,
 
 07-0492 (La.6/26/09), 21 So.3d 186(on
 
 reh’g),
 
 21 So.3d 186, 202.
 
 [2]
 
 The Louisiana Supreme Court reasoned as follows:
 

 
 *865
 
 14Because medical malpractice actions are governed by the specific provisions of the Act regarding prescription and suspension of prescription, ... we find that any general codal article which conflicts with these provisions may not be applied to such actions in the absence of specific legislative authorization in the Act. The Act has no rules allowing relation back of pleadings for medical malpractice claims. The application of Article 1153 would permit the adding of an plaintiff subsequent to the expiration of the three-year period provided for in La. R.S. 9:5628, and would read out of the statute the prescription and suspension period provisions by La. R.S. 9:5628 and La. R.S. 40:1299.47; therefore, La. C.C.P. art. 1158 may not be applied to the medical malpractice action.
 

 Warren,
 
 07-0492 at p. 9, 21 So.3d at 207-08.
 

 A defendant may raise a peremptory exception of prescription at any time. When such an exception is pled before trial, the exception is tried and disposed of in advance of or on the trial of the case. La. C.C.P. art. 929. In the trial of the peremptory exception pleaded at or before the trial of the case, “evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.” La. C.C.P. art. 931. The trial court is not bound to accept as true the allegations of plaintiffs petition in its trial of the peremptory exception. When evidence is introduced and evaluated at the trial of a peremptory exception, an appellate court must review the entire record to determine whether the trial court manifestly erred with its factual conclusions. “Although the party pleading prescription ordinarily has the burden of proof, the burden is shifted to the plaintiff when the petition on its face reveals that prescription has run.”
 
 Jambon v. State Farm Fire and Cas. Co.,
 
 07-925, p. 4 (La.App. 5 Cir. 3/11/08), 982 So.2d 131, 133;
 
 see also Carter v. Haygood,
 
 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. Furthermore, if the plaintiffs basis for claiming interruption of prescription is solidary liability between two or more | ^parties, the plaintiff bears the burden of proving that solidary relationship.
 
 Younger v. Marshall Industries, Inc.,
 
 618 So.2d 866, 869 (La.1993).
 

 Although Ms. Ferrara filed a complaint with the Division of Administration within one year of the date of the alleged medical malpractice, her complaint named as defendants only Tulane and Nurse Jane Doe. The amended complaint naming Ms. Wad-dell as a defendant was not filed until April 16, 2002, more than one year from the alleged malpractice. The lawsuit naming Ms. Waddell and Starmed as defendants was not filed until August 9, 2002. For the amended complaint and the lawsuit to be considered timely, it is necessary to find that the prescription was suspended. Ms. Ferrara cites three theories to support her contention that prescription was suspended: (i) timely suit against a solidary obligor; (ii) relation back doctrine; and (iii)
 
 contra non valentem
 
 doctrine. We separately address each theory.
 

 (i) timely suit against a solidary obli-gor
 

 Ms. Ferrara contends that prescription was suspended because she time
 
 *866
 
 ly filed a complaint against Tulane, a soli-dary obligor of Ms. Waddell and Starmed, for the claimed damages. We find, as Ms. Waddell and Starmed contend, that the present defendants (Ms. Waddell and Starmed) cannot be solidarily liable with Tulane because Tulane is no longer a party to the action. After the medical review panel reached its decision, Ms. Ferrara failed to file suit against Tulane. It is well-settled that where no liability is found on the part of a timely sued alleged tort-feasor, prescription will not be interrupted or suspended as to another tortfeasor, who is not timely sued, since no joint or soli-dary obligation exists.
 
 ¿¡Renfroe v. State of Louisiana, Dep’t of Transp. and Dev.,
 
 01-1646, p. 4 (La.2/26/02), 809 So.2d 947, 950.
 

 The naming of Nurse Jane Doe in the original complaint did not establish soli-dary liability because “using fictitious names for an unknown defendant is insufficient to interrupt prescription; suit must be commenced against at least one soli-dary obligor.”
 
 Hodges v. Republic Western Ins. Co.,
 
 05-0245, p. 8, n. 9 (La.App. 4 Cir. 12/14/05), 921 So.2d 175, 180 (citing
 
 Compeaux v. Plaisance Inspection & Enterprises, Inc.,
 
 93 1165, p. 8 (La.App. 1 Cir. 6/24/94), 639 So.2d 434, 439).
 

 (ii) relation back doctrine
 

 Ms. Ferrara next contends that her amended complaint, which she filed on April 16, 2002, related back to the original complaint. As discussed above, the Louisiana Supreme Court in Warren, supra, held that the relation back doctrine cannot be applied in medical malpractice cases. The trial court thus did not err in refusing to apply the relation back doctrine to allow the Ms. Ferrara’ amended complaint to relate back to the filing of her original complaint.
 

 (iii)
 
 contra non valentem
 
 doctrine
 

 Ms. Ferrara’s final contention is that prescription was suspended by the
 
 contra non valentem
 
 doctrine. Particularly, she relies on the fourth category of the
 
 contra non valentem
 
 doctrine, which applies when some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. A prerequisite for the fourth category to apply is that “the plaintiffs ignorance of his cause of action cannot be attributable to his own willfulness or neglect, as a plaintiff is deemed to know what he could have learned |7by reasonable diligence.”
 
 Edwards v. Alexander,
 
 42,000, p. 21 (La.App. 2 Cir. 6/6/07), 960 So.2d 336, 348 (citing
 
 Renfroe, supra.)
 

 Ms. Ferrara contends that it was impossible for her to know the true identity of the nurse who treated her until Tulane, through a petition for discovery, furnished her with this information. Continuing, she points out that when Tulane provided her with that information the one-year prescriptive period had elapsed, but the three-year period of La. R.S. 9:5628 had not elapsed. Thus, she contends that she timely filed the amended panel claim within the three year period against Ms. Wad-dell once she discovered her identity.
 

 Ms. Waddell and Starmed counter that Ms. Ferrara’s reliance on the fourth category of
 
 contra non valentum
 
 is misplaced. In support, they cite
 
 Edwards, supra,
 
 in which the appellate court affirmed the trial court’s decision sustaining the defendant-doctor’s exception of prescription. Finding the plaintiff had constructive knowledge of the defendant’s involvement in the patient’s care, the court reasoned that “[i]f mention of Dr. Alexander’s name on numerous documents in the ER record did not excite plaintiffs curiosity about the involvement of Dr. Alexander in her son’s
 
 *867
 
 treatment, then certainly questions had to be raised when Dr. Belue’s [the doctor originally named in the complaint] dictated ER report ... was read by plaintiff.”
 
 Edwards,
 
 42,000 at pp. 22-28, 960 So.2d at 348. By analogy, Ms. Waddell and Starmed contend that Ms. Waddell’s identity was easily discernable from Ms. Fer-rara’s medical records, which reference her name on numerous occasions.
 

 This case is distinguishable from
 
 Edwards, supra.
 
 In that case, the defendant-doctor’s (Dr. Alexander’s) name appeared in type-written form in multiple places in the patient’s emergency room records, and there was other | ^evidence establishing the plaintiffs constructive knowledge. In contrast, Ms. Waddell’s name does not appear in type-written form in the medical records; rather, her name appears in handwritten form in various places in the nurses notes. The name of Ms. Waddell’s employer, Starmed, does not appear in the medical records.
 

 This case is closer to
 
 Shortess v. Touro Infirmary,
 
 520 So.2d 389 (La.1988), which the court in
 
 Edwards, supra,
 
 distinguished. In
 
 Shortess,
 
 “the medical records did not reveal that the plaintiffs tainted blood came from anywhere other than Touro’s blood bank, and the plaintiff had no way of knowing that an outside blood bank was the source of her tainted blood as that could only be discovered by tracing serial numbers through Touro’s card files.”
 
 Edwards,
 
 42,000 at p. 24, 960 So.2d at 349. The appellate court in
 
 Shor-tess
 
 found that the defendant-blood supplier’s identity was readily discernable from the hospital’s records and thus sustained the exception of prescription. Reversing, the Louisiana Supreme Court characterized the appellate court’s statement regarding the plaintiffs ability to discern the blood supplier’s identity from the hospital’s record as “misleading,” and the Supreme Court explained that:
 

 “Simply because these facts may have been obtained at a particular place or in a particular manner, and the plaintiffs did not happen to make a search in that particular place and especially since they had never been put on notice and were wholly ignorant of the existence in any place of the facts upon which to base an action, this Court does not think their ignorance is wilful nor the result of any negligence on their part.”
 

 Shortess,
 
 520 So.2d at 392 (quoting
 
 Walter v. Caffall,
 
 192 La. 447, 188 So. 137 at 143 (1939)).
 

 In this case, Ms. Waddell was working at Tulane as an employee of Starmed, a third party nursing agency, when the malpractice occurred. Although in |flhindsight Ms. Waddell’s name in handwritten form can be discerned from the nurses’ notes located in the Tulane medical records, Ms. Ferrara could not have reasonably identified the identity of Ms. Waddell or Starmed until Tulane responded to the discovery request and furnished their identity. Accordingly, we find manifest error and thus reverse the trial court’s ruling sustaining the exception of prescription filed by Ms. Waddell and Starmed.
 

 DECREE
 

 For the foregoing reasons, the judgment of the trial court is reversed.
 

 REVERSED.
 

 [1]
 

 . For ease of discussion, we refer to the plaintiffs singularly as "Ms. Ferrara.”
 

 [2]
 

 . The relation back doctrine is codified in La. C.C.P. art. 1153, which provides: "When the
 
 *865
 
 action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.” A plaintiff can only amend a petition that is in existence and pending at the time the amendment is filed. La. C.C.P. art. 1151.