DREW, J.
11 Carolyn Correro appeals a judgment granting the prescription exceptions of Dr. Jose Ferrer and IASYS Glenwood Regional Medical Center and dismissing her medical malpractice lawsuit.
We affirm.
FACTS
On April 23, 2011, Correro underwent surgery at Glenwood to repair her fractured left hip. Unfortunately, the surgeon, Dr. Ferrer, began the procedure by making an incision in-her right hip before *318 realizing the error a few minutes later. He then proceeded to perform surgery on the left hip as intended.
On April 12, 2012, Correro’s attorney, Douglas Plymale, sent a letter to the Division of Administration requesting the formation of a Medical Review Panel (“MRP”) against Dr. Ferrer and Glen-wood.. It was noted as received on April 17.
On August 13, 2013, Plymale wrote to the Patient’s Compensation Fund (“PCF”) that Dr. Ferrer had waived the panel proceeding and was to be dismissed as a defendant. Nine days later, Plymale received notice from PCF that Dr. Ferrer had been'dismissed.
On November 1, 2013, the MRP’s attorney chairman wrote to the parties that he had scheduled a meeting with the panel ,on November 19 to discuss and decide the case. Two weeks later, Plymale contacted the attorney chairman asking that the panel hearing be postponed because Glen-wood’s . position paper submitted two months earlier had revealed for the first time that two people involved in the surgery, Bernie Caldwell, the physician assistant, and Cathy Greer, the certified registered anesthetist, | ;>were not Glenwood employees. Correro wanted to amend her complaint to add Caldwell and Greer as defendants.
The attorney chairman replied on November 18 that he was- not willing to postpone the hearing. He told Plymale that he could file a new complaint in a new proceeding against any additional parties and have a MRP panel against the new parties.
On November 19, Plymale wrote to the Division of Administration that because of the revelation in Glenwood’s position paper, Correro wanted to amend her. complaint to add Caldwell and Greer as additional independent defendants.
The MRP proceeded as scheduled. It found that the evidence supported the conclusion that Glenwood failed to meet the applicable standard of care in the treatment of Correro, and as a result of this deviation, Correro incurred a right hip incision that should not have been made. The opinion was sent by certified -mail on December 27, 2013, and received by Ply-male on January 3,2014.
On January 13, 2014, the attorney chairman wrote to counsel that he was waiting for payment of his" invoice mailed with the MRP opinion before he would proceed with any work as attorney chairman regarding the amended complaint. He also wanted an understanding that'all work he was to do as attorney chairman regarding the amended complaint would be invoiced and paid in accordance with the statutes as would any other panel proceeding, meaning the work he previously invoiced would not go against the statutory cap on his fees. Plymale replied that he agreed to this.
|3On January 31, 2014, Plymale received a certified letter from PCF stating that ■unbeknownst to PCF, an opinion had been rendered on the earlier panel request when the amendment .submitted on November 19 was filed. Therefore, the amendment would be processed as a new request for a MRP and given a new PCF file number.
On April 23, 2014, Caldwell and Greer filed an exception of prescription, which the trial court granted on July 1, 2014. Correro appealed.
On August 27, 2014, Correro filed a lawsuit against Dr. Ferrer, Glenwood, XYZ Insurance Company, and LAMMICO. She alleged that prescription was interrupted or suspended as to Dr. Ferrer by a *319 written tolling agreement between Correro and her; as to Glenwood, as a joint obli-gor, by the tolling agreement; and as to Dr. Ferrer and Glenwood by the continuing pendency of a MRP against other joint and solidary obligors.
On September 18, 2014, Dr. Ferrer filed an exception of prescription; Glenwood also filed one. On March 13, .2015, Corre-ro filed a motion for a stay of the hearing on these exceptions because of the-pending appeal regarding the dismissal of Caldwell and Greer. - The motion was denied. The exceptions of prescription , filed by Dr. Ferrer and Glenwood were granted on May 8. Correro appealed.
On June 3, 2015, this court rendered an opinion reversing the judgment granting the exceptions' of prescriptions ' filed by Greer and Caldwell. Correro v. Caldwell, 49,778 (La.App.2d Cir.6/3/15), 166 So.3d 442, writ denied, 2015-1536 (La.10/23/15), 179 So.3d 607. This court concluded that the trial court had committed an error of law by ruling that ^prescription had not been suspended by the timely MRP filing. This court noted that because - the first MRP was still pending when Correro made her complaint against Caldwell and Greer, it served to suspend prescription on the claims against all joint tortfeasors, including unnamed ones. This court then added that.“once the timely request was made to add Caldwell and Greer, it served to likewise suspend prescription against, all joint tortfeasors, i.e., Dr. Ferrer and Glen-wood.” This court concluded by stating that “the timely filed claim against Caldwell and Greer served to suspend prescription against the remaining alleged joint tortfeasor, Glenwood.” .. .
DISCUSSION
La. R.S, 9:5628(A) sets forth the prescriptive period for Correro’s medical malpractice claim:
No action for damages for injury or death ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date, of such discovery, in all events such claims shall be filed at the latest within a period of three years from the (date of the alleged act, omission,, or neglect.
Under La, R.S. 40:1231.8(A)(2)(a)[1], the filing, of the request for a medical panel suspends prescription: ,,
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of thé opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the |fiprovisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part, The filing of a request for review of a claim shall suspend the running of prescription against all joint and soli-dary obligors, and all joint tortfeasors, *320 including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review[J

Law of the case

In the earlier appeal, this court stated:
Clearly, when Correro made her complaint against Caldwell and Greer, the initial panel was still pending, and according to statutory law' and the jurisprudence, it served to suspend prescription of the claims against all joint tortfeasors, even unnamed ' ones.... Moreover, once the timely request was made to add Caldwell and Greer, it served to likewise suspend prescription against all joint tortfeasors-, i.e., • Dr. Ferrer and Glenwood.
Correro, 49,778 at p. 8, 166 So.3d at 447.
Correro argues that this court’s statement that the second MRP panel suspended prescription against Dr. Ferrer and Glenwood became the law of the case and precluded the trial court from granting the exception of prescription. We disagree.
This court recently reviewed' the policy of law of the case:
The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand' and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the Inefficiency, and the .essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue. Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81 (La.1973). However, even when applicable, the law of the case is discretionary and should not be applied where the error is palpable and the application would result in injustice. Id.; Arceneaux v. Amstar Corp., 10-2329 (La.7/1/11), 66 So.3d 438.
J-W Operating Co. v. Olsen, 49,925, pp. 17-18 (La.App.2d Cir.6/24/15), 167 So.3d 1123, 1132-33.
Although this appeal and the earlier appeal arise from the same set of facts, they involved two separate MRP proceedings. Moreover, neither Dr. Ferrer nor Glen-wood. was a party in the earlier appeal.
Finally, this court’s statement in the pri- or opinion was not essential to the review in that appeal as the timeliness of the suit against Dr. Ferrer and Glenwood was not before it. Therefore, it was dictum.

Prescription

Correro argues that her lawsuit against Dr. Ferrer and Glenwood was not prescribed because her claim against all joint tortfeasors has been suspended by a pending MRP panel since the original MRP proceeding was requested on April 12, 2012. She notes that the second MRP against Caldwell and Greer is still pending.
Dr. Ferrer and Glenwood maintain that prescription against them was no longer suspended once the first MRP mailed its opinion on December 27, 2013. Under La. R.S. La. R.S. 40:1231.8(A)(2)(a), this mailing triggered the 90-day period before suspension of prescription ended. When *321 those 90 days are added to the time remaining in the original prescriptive period before a MRP was first requested, that left Correro until April 7, 2014, to |7file suit against them. Dr. Ferrer and Glenwood urge that the first MRP cannot be used as the basis for suspension of prescription on the claims against Caldwell and Greer, and then in turn, have those claims against Caldwell and Greer serve as .the basis for suspension of prescription on the claims against them that became subject to the 90-day period following the issuance of the MRP opinion.
Correro argues that because there is a conflict within La. R.S. 40:1231.8(A)(2)(a), then it must be strictly construed against prescription .and her lawsuit should be deemed timely.[2] This asserted conflict is between the provision that (1) the filing of the request for a review of a claim shall suspend the time within which suit must be instituted, ⅛ accordance with this Part, until 90 days following notification, by certifiéd mail, of the issuance of the opinion by the medical review panel, and (2) that the filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfea-sors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
Correro contends that because Caldwell, Greer, Dr. Ferrer, and Glenwood are all joint tortfeasors, then the pending MRP against Caldwell and Greer suspended prescription against Dr. Ferrer and Glenwood despite the mailing of the opinion from the first MRP.
|SA similar situation was addressed by the Fifth Circuit in Maestri v. Pazos, 15-9 (La.App. 5th Cir.5/28/15), 171 So.3d 369. In that matter, a complaint had been filed with PCF against a geriatric hospital, a doctor, and a nurse practitioner. Two weeks later, PCF informed plaintiff by letter that while the doctor and the hospital were qualified health care providers, the nurse practitioner was not. The plaintiff then waited more than 90 days[3] to file suit against thé nurse practitioner. The plaintiffs maintained that the lawsuit was still timely because regardless of the triggering of the 90-day provision by the mailing of the notice from PCF, the MRP that was still pending against the doctor and the hospital, who were joint tortfeasors with the nurse practitioner, continued to suspend prescription as to the nurse practitioner. The Fifth Circuit rejected this argument, concluding that the lawsuit against the nurse practitioner was untimely since it was filed more than 90 days after the plaintiff was notified that the nurse practitioner was not a qualified health care provider.
We find Maestri v. Pazos persuasive. La. R.S. 40:1231.8(A)(2)(a) is clear that *322 once the MRP rendered its opinion against Glenwood after having already dismissed Dr. Ferrer, Correro then had 90 days plus whatever remained in the original prescriptive period to file suit against Dr. Ferrer and Glenwood. She did not do that.
Correro maintains that she was unable to identify. Caldwell and Greer from the medical records. She cites Ferrara v. Starmed Staffing, LP, 2010-0589 (La.App. 4th Cir.10/06/10), 50 So.3d 861, writ denied, 2010-2484 (La.2/4/11), 57 So.3d 311, where the appellate court concluded that the fourth category of contra non valen-tem applied to preserve a claim against a nurse. Ferrara had filed a timely complaint in February of 2002 against a hospital and a fictitious nurse for alleged malpractice in February of 2001. Two months later, she amended her complaint to name the nurse. In July of 2002, she learned that the nurse was not a qualified health care provider, and within a month she filed suit against the nurse and a nursing agency. The issue became whether the fourth category of contra non valentem applied to preserve her claim. Ferrara can be readily distinguished as the issue at hand is not whether prescription was suspended against later-named defendants such as Caldwell and Greer, but whether prescription against the defendants named in the original complaint remained suspended after that MRP rendered a decision and while another panel against possible soli-dary obligors was still pending.
Correro further contends that she should not be prejudiced by the decision of the attorney-chairman to proceed with the panel hearing, as well as the decision by the Division of Administration to treat the amendment as a new complaint. Again, that addresses the timeliness of the claims against Caldwell and Greer.

Tolling agreement

Correro argues that prescription as to her claim against Dr. Ferrer remained suspended by' the terms of the' agreement that was reached to |indismiss Dr. Ferrer from the MRP.[4] She also argues that Glenwood is bound by that agreement if there was a surety relationship between the hospital and Dr. Ferrer.
Dr. Ferrer’s attorney, David Verlander, emailed Correro’s attorney, Plymale, on July 22, 2013, asking if he was still “on-board” about abandoning the MRP as to Dr. Ferrer and letting him file suit with service on Verlander. Plymale replied that it was still okay to do that.
The July 24, 2013, letter from Verlander to Plymale which Correro attempts to characterize as a tolling agreement states, in part:
Because the sole role of the medical review panel is to determine whether Dr. Ferrer, breached the standard of care and whether Ms. Correro suffered any harm as a result ..., we have agreed that the MRP proceeding as to Dr. Ferrer is without practical purpose, and that in lieu thereof you will file suit in Fourth District Court and deliver it to me (with the suit number on it). I will accept service. Dr. Ferrer will be dismissed from the MRP proceeding, reserving your rights as to the Hospital. We agree that there will be no prescription issues based upon this procedure. We also agree that the suit will lie inactive (except for an answer by Dr. Ferrer to accept service and to formally admit *323 his fault as stated above) until -the MRP proceeding has ended as to the Hospital and you have decided whether or not you will be adding the Hospital as a defendant in the suit. I agree further that if you elect to activate or proceed forward with the suit at any other time, you can do so, on giving me fifteen days’ notice.
If this meets with your approval, please proceed to file the suit and send it to me, and to notify the PCF and panel chair of this process that we are agreeing to. If this does not meet with your approval and you decline,-,to follow this process, this letter shall not be deemed nor used as an admission of fault nor as evidence. If you do agree and follow this procedure, this letter may be so used, if needed to epforce our agreement.
InOn August 7, 2013, Verlander emailed Plymale and the attorney chairman that “[t]o be clear, the panel proceeding will no longer involve Dr. Ferrer and the panel will not be opining as to him. The panel as to him will be dismissed and a suit filed, of which I will accept service.”
Dr. Ferrer contends that the intention of the agreement was that the lawsuit would be filed immediately. While the agreement does not state this, it does state that “the suit will lie inactive (except for an answer by Dr. Ferrer to accept service and to formally admit his fault as stated above) until the MRP proceeding has ended as to the Hospital and you have decided whether or not you will be adding the Hospital as a defendant in the suit.” The clear implication is that the suit against Dr. Ferrer was to be filed at least before the MRP rendered its opinion regarding Glenwood.
Correro’s argument-that the agreement continued to suspend prescription past the 90-day period triggered by the notification of the MRP result regarding Glenwood is without merit. .
Correro further contends that even if prescription began running again upon issuance of the panel opinion despite the terms of the agreement, the suit was still timely filed since it was brought within one year of that opinion. It appears that Cor-rero is treating the agreement in that sense as an interruption, of prescription. However, “medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription, to the exclusion of the general codal articles on interruption of prescription.” Borel v. Young, 2007-0419, p. 25 (La.11/27/07), 989 So.2d 42, 67.
|12FinaIly, Correro argues that the doctrine of equitable estoppel should apply to prevent Dr. Ferrer from arguing that the agreement did not toll prescription on her claim against him. This argument is also without merit, At the Very least, Correro could not justifiably rely on the agreement to ignore the 90-day provision when the agreement states that the suit will remain inactive after being filed until the MRP proceeding.against Glenwood has concluded.
CONCLUSION
The trial court correctly ruled that Cor-rero’s claims against Dr. Ferrer and Glen-wood were prescribed. At Correro’s costs, the judgment is AFFIRMED.
CARAWAY, J., concurs in part and dissents in part with written reasons.

. La. R.S. 40:1231.8 was redesignated from R.S. 40:1299.47 by H.C.R. No. 84 of the 2015 Regular Session.

. Where there are two permissible interpretations of a prescriptive statute, the courts must adopt the one that favors maintaining rather than barring the action. Bustamento v. Tucker, 607 So.2d 532 (La.1992). However, that does not mean that every prescriptive statute must be interpreted in order to avoid prescription. Turner v. Willis Knighton Med. Ctr., 2012-0703 (La.12/4/12), 108 So.3d 60.

. "The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, ... or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part.” La. R.S. 40:1231.8(A)(2)(a).

. La. C.C. art. 3505 provides: “After libera-tive prescription has commenced to run but before it accrues, an obligor may by juridical act extend the prescriptive period. An obli-gor may grant successive extensions. The duration of each extension may not exceed one year.”. .